No. 25-2491

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NORTHWEST ASSOCIATION OF INDEPENDENT SCHOOLS, *et al.*,

*Plaintiffs-Appellants*,

v.

RAÚL LABRADOR, in his official capacity as Attorney General
for the State of Idaho, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Idaho
Case No. 1:24-cv-00335-AKB

## APPELLEE RAÚL LABRADOR'S ANSWERING BRIEF

RAÚL R. LABRADOR
ATTORNEY GENERAL

OFFICE OF IDAHO ATTORNEY
GENERAL
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
alan.hurst@ag.idaho.gov

ALAN M. HURST
Solicitor General

MICHAEL A. ZARIAN
Deputy Solicitor General

AARON M. GREEN
Deputy Attorney General

*Counsel for Appellee Raúl Labrador in his official capacity as Attorney General*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION ..............................................................................................1

STATEMENT OF THE CASE ..............................................................................2

   I.   Idaho Passes Obscenity Laws in 1972 and 1976................................2

   II.  Idaho Applies Its Obscenity Law, Civilly, to Schools and Libraries......................6

   III. Northwest Sues ..............................................................................8

STATEMENT OF THE ISSUES ..........................................................................10

STANDARD OF REVIEW ................................................................................10

SUMMARY OF THE ARGUMENT ....................................................................11

ARGUMENT ................................................................................................13

   I.   The Statutes Are Constitutional Unless Unambiguously Overbroad..................13

      A.  Overbreadth requires invalid applications to outweigh valid ones. ..............14

      B.  Ambiguous Idaho statutes are interpreted to be constitutional. ...................17

   II.  Idaho's Statutes Are Not Overbroad........................................................20

      A.  The legislature set a discernable limit on the statute's scope. .........................21

      B.  The statute satisfies the first prong's "taken as a whole" requirement. ........28

      C.  The statute applies only to sexual conduct and excretory functions. ...........33

      D.  The statute does not prohibit works with serious value. ...............................39

   III. The district court correctly found that the remaining preliminary injunction factors do not support an injunction. ..................................................50

      A.  Northwest cannot demonstrate irreparable harm because there is no evidence it will be affected by the statute. .......................................................50

      B.  Because Appellee is a government entity, the Balance of Equities and Public Interest merge and both weigh in favor of Appellee. .....................................53

CONCLUSION ..............................................................................................54

# TABLE OF AUTHORITIES

## CASES

*A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Att'y Gen. of Mass.*,
383 U.S. 413 (1966) ........................................................................................ 2

*ACLU v. Ashcroft*,
322 F.3d 240 (3d Cir. 2003) ......................................................................... 44

*Am. Beverage Ass'n v. City and Cnty. of S.F.*,
916 F.3d 749 (9th Cir. 2019) ........................................................................ 53

*Am. Booksellers v. Webb*,
919 F.2d 1493 (11th Cir. 1990) ............................................................... 44, 45

*Am. Booksellers Ass'n, Inc. v. Virginia*,
802 F.2d 691 (4th Cir. 1986) ........................................................................ 47

*Ariz. Att'ys for Crim. Just. v. Mayes*,
127 F.4th 105 (9th Cir. 2025) ................................................................. 14, 33

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) ....................................................................... 10

*Blankenship v. W. Union Tel. Co.*,
161 F.2d 168 (4th Cir. 1947) ................................................................... 23, 24

*Bradbury v. Idaho Jud. Council*,
28 P.3d 1006 (Idaho 2001) ........................................................................... 17

*Brockett v. Spokane Arcades, Inc.*,
472 U.S. 491 (1985) ........................................................................................ 6

*Carcieri v. Salazar*,
555 U.S. 379 (2009) ...................................................................................... 25

*Chandler's-Boise LLC v. Idaho Tax Comm'n*,
398 P.3d 180 (Idaho 2017) ........................................................................... 34

*Cinecom Theaters Midwest States, Inc. v. City of Fort Wayne*,
473 F.2d 1297 (7th Cir. 1973) ...................................................................... 49

*City of Lewiston v. Mathewson*,
303 P.2d 680 (Idaho 1956) ........................................................................... 18

*Commonwealth v. Am. Booksellers Ass'n, Inc.*,
372 S.E.2d 618 (Va. 1988) ............................................................................ 47

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ........................................................................ 10

*Doe v. Snyder*,
  28 F.4th 103 (9th Cir. 2022) .................................................................. 10

*Dong v. Smithsonian Inst.*,
  125 F.3d 877 (D.C. Cir. 1997) ............................................................... 25

*Doolittle v. Morley*,
  292 P.2d 476 (Idaho 1956) ..................................................................... 19

*Env't Prot. Info. Ctr. v. Carlson*,
  968 F.3d 985 (9th Cir. 2020) ........................................................... 10, 50

*Erznoznik v. City of Jacksonville*,
  422 U.S. 205 (1975) ............................................................................... 48

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
  82 F.4th 664 (9th Cir. 2023) .................................................................. 53

*Garity v. APWU Nat'l Lab. Org.*,
  828 F.3d 848 (9th Cir. 2016) .................................................................. 52

*Ginsberg v. New York*,
  390 U.S. 629 (1968) ........................................................... 9, 16, 48, 49, 54

*Helvering v. Morgan's, Inc.*,
  293 U.S. 121 (1934) ............................................................................... 23

*In re 1979 Valuation of Parcel No. R2348750330 of Crow*,
  662 P.2d 1125 (Idaho 1983) ................................................................... 17

*In re Williamson*,
  19 P.3d 766 (Idaho 2001) ....................................................................... 19

*Jacobellis v. Ohio*,
  378 U.S. 184 (1964) ......................................................................... 13, 15

*Kois v. Wisconsin*,
  408 U.S. 229 (1972) .......................................................................... 2, 32

*Labrador v. Poe*,
  144 S. Ct. 921 (2024) ............................................................................. 54

*Leonardson v. Moon*,
  451 P.2d 542 (Idaho 1969) ........................................................ 18, 24, 33

*Maryland v. King*,
  567 U.S. 1301 (2012) ............................................................................. 54

*Miller v. California*,
  413 U.S. 15 (1973) ........................................................................ *passim*

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ...................................................................................... 9

*Moshoures v. City of N. Myrtle Beach*,
131 F.4th 158 (4th Cir. 2025) ..................................................................... 53

*Nelson v. Kendrick*,
466 N.W.2d 402 (Mich. Ct. App. 1991) ...................................................... 23

*Nken v. Holder*,
556 U.S. 418 (2009) ..................................................................................... 53

*Nobert v. City and Cnty. of S.F.*,
10 F.4th 918 (9th Cir. 2021) ........................................................................ 10

*Pope v. Illinois*,
481 U.S. 497 (1987) ................................................................................ 6, 45

*Powell's Books, Inc. v. Kroger*,
622 F.3d 1202 (9th Cir. 2010) ........................................................ 17, 47, 48

*Roth v. United States*,
354 U.S. 476 (1957) .......................................................................... 2, 28, 32

*Rowan v. Post Off. Dep't*,
397 U.S. 728 (1970) ..................................................................................... 48

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
99 F.4th 458 (9th Cir. 2024) ........................................................................ 18

*Scandrett v. Shoshone Cnty.*,
116 P.2d 225 (Idaho 1941) ........................................................................... 18

*Snyder v. Phelps*,
562 U.S. 443 (2011) ..................................................................................... 49

*St. Luke's Magic Valley Reg'l Med. Ctr., Ltd. v. Bd. of Cnty. Comm'rs of Gooding Cnty.*,
237 P.3d 1210 (Idaho 2010) ......................................................................... 43

*State v. Bundy*,
566 P.3d 445 (Idaho 2025) ........................................................................... 18

*State v. Byington*,
977 P.2d 211 (Idaho Ct. App. 1998) ........................................................... 15

*State v. McNeely*,
398 P.3d 146 (Idaho 2017) ........................................................................... 52

*State v. Parsons*,
543 P.3d 465 (Idaho 2024) ........................................................................... 15

*State v. Staples,*
  548 P.3d 375 (Idaho Ct. App. 2023) ........................................................19

*State v. Yzaguirre,*
  163 P.3d 1183 (Idaho 2007) ....................................................................19

*Stokeling v. United States,*
  586 U.S. 73 (2019) ..................................................................................19

*Tinker v. Des Moines Sch. Dist.,*
  393 U.S. 503 (1969) ................................................................................48

*TracFone Wireless, Inc. v. State,*
  351 P.3d 599 (Idaho 2015) ......................................................................41

*Tucson v. City of Seattle,*
  91 F.4th 1318 (9th Cir. 2024) ............................................................ 14, 15

*United States v. 31 Photographs,*
  156 F. Supp. 350 (S.D.N.Y. 1957) ..........................................................32

*United States v. Am. Libr. Ass'n, Inc.,*
  539 U.S. 194 (2003) ................................................................................16

*United States v. Hansen,*
  599 U.S. 762 (2023) ....................................................... 13, 14, 15, 33

*United States v. Herrera,*
  974 F.3d 1040 (9th Cir. 2020) ................................................................24

*United States v. Salerno,*
  481 U.S. 739 (1987) ................................................................................13

*United States v. Williams,*
  553 U.S. 285 (2008) .......................................................................14, 15, 26

*Virginia v. Am. Booksellers Ass'n, Inc.,*
  484 U.S. 383 (1988) ................................................................................46

*Voyles v. City of Nampa,*
  548 P.2d 1217 (Idaho 1976) ....................................................................38

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ....................................................................................10

*Whole Women's Health v. Jackson,*
  595 U.S. 30 (2021) ..................................................................................52

## STATUTES

1969 Idaho Sess. Laws, ch. 325 § 1 ..............................................................2

1971 Oregon Laws ch. 743 § 255 ............................................................38

1972 Haw. Sess. Laws Act 9, ch. 12 pt. II ...........................................38

1976 Idaho Sess. Laws ch. 81, § 15 .........................................................5

Haw. Penal Code § 1210 ..........................................................................38

Idaho Code § 18-1514 ....................................................................*passim*

Idaho Code § 18-1515 ..................................................... 2, 5, 6, 40, 51

Idaho Code § 18-1517 ........................................................................ 6, 51

Idaho Code § 18-1517B ..................................................................*passim*

Idaho Code § 18-4101 ..............................................................................41

Or. Rev. Stat. § 167.060 .........................................................................38

Va. Code § 18.2-391 .................................................................................47

**RULES**

Fed. R. Civ. P. 65 ....................................................................................52

**OTHER AUTHORITIES**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ...............................................................................35

H.B. 710, 67th Leg., 2nd Reg. Sess. (Idaho 2024) ..........................*passim*

*Herein*, Merriam-Webster Online .........................................................40

*Homosexuality*, Random House Webster's College Dictionary (2d ed. 1999) ..................37

*Homosexuality*, Webster's New Collegiate Dictionary (1977) ...............37

Idaho State Senate, State Affairs Hearing (Mar. 20, 2024) .......... 6, 19

NJ, *How Many Websites Are There in the World?*, Siteefy (Mar. 20, 2025) ..........................16

Ogi Igas & Sai Gaddam, *A Billion Wicked Thoughts* (2011) ................16

Petroc Taylor, *Volume of data/information created, captured, copied, and consumed worldwide from 2010 to 2023, with forecasts from 2024 to 2028*, Statista (Nov. 21, 2024) ...............................................................16

*Sexual Intercourse* Definition & Meaning, Dictionary.com ...................37

*Sexual Intercourse*, Webster's New Collegiate Dictionary (1977) .........37

*Sexual Intercourse*, Merriam-Webster Online .......................................37

William B. Lockhart & Robert C. McClure, *Censorship of Obscenity: The Developing Constitutional Standards*, 45 Minn. L. Rev. 5 (1960) ..................49

## INTRODUCTION

This case is not about H.B. 710. The appellants can say as many times as they like that it's H.B. 710 they're attacking, but they can't change what H.B. 710 actually is: not a new book ban, but merely a new civil enforcement mechanism aimed at obscene material that Idaho law has criminally prohibited in nearly identical terms since 1976.

The reason Northwest and other the appellants (collectively, **Northwest**) care about H.B. 710 is not that it expanded Idaho's definition of obscenity—in fact, the opposite is true, with H.B. 710 deleting language that was inconsistent with intervening Supreme Court precedent. Northwest's real objection is that, while the 1976 prohibition exempts schools and public libraries, the new civil enforcement mechanism contains no such exemption, meaning that Northwest and other Idaho schools and libraries must now hold themselves to the same standard that Idaho bookstores have had to follow for 49 years.

In reality, this case is about the 1976 statute, which established the definition of "harmful to minors" that Northwest contests. And the 1976 statute was expressly written to comply with the exact precedent that Northwest says the statute violates: the whole statute had its genesis when Democratic Governor Cecil Andrus—no red-state culture warrior—concluded that *Miller v. California* had invalidated Idaho's obscenity law and asked the Attorney General to draft a new one that would fix the problem.

Not once in 49 years has the 1976 statute's constitutionality been challenged in court, and not once (so far as Northwest or the reported cases can demonstrate) has

1

the 1976 statute ever been enforced under the expansive theories Northwest uses to argue it is overbroad. It seems no one but Northwest and its lawyers has ever imagined that the statute's mention of "homosexuality" as a form of "sexual conduct" bans depictions of same-sex handholding, or that the statute's exception for works of serious value protects descriptions of masturbation and excretory functions but not descriptions of sexual intercourse.

In short, this case is not about a radical book ban—it is about a long-established, unremarkable obscenity statute whose key phrases are all quotes from controlling Supreme Court precedent. Its constitutionality should be upheld, and the district court's order should be affirmed.

## STATEMENT OF THE CASE

### I. Idaho Passes Obscenity Laws in 1972 and 1976

This statute's story begins in 1969, when Idaho passed a bill making it illegal to provide minors with material that was obscene with respect to minors. 1969 Idaho Sess. Laws, ch. 325 § 1, p. 1025. This bill was recodified with an overhaul of the criminal code in 1972. Idaho Code §§ 18-1514, 18-1515 (1976). The bill was based on *Roth v. United States*, 354 U.S. 476 (1957) and *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Att'y Gen. of Mass.*, 383 U.S. 413 (1966)—two pre-*Miller* cases in which the Supreme Court sought to set boundaries on the sorts of obscenity that states could prohibit without violating the Free Speech Clause. *Kois v. Wisconsin*, 408 U.S. 229 (1972).

2

The law was poorly timed—in 1973, the Supreme Court decided *Miller v. California* and revised the Free Speech doctrine that the Legislature had intended to comply with. Under the new three-prong *Miller* test, a court determining whether a work constituted prohibitable obscenity is required to ask:

1) "[W]hether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest."

2) "[W]hether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law."

3) And "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

413 U.S. 15, 24 (1973) (cleaned up).

In 1976, the Idaho Legislature took up the obscenity issue again. The Senate Judiciary Committee minutes for March 1 recount the testimony of a deputy attorney general who "explained that six months after the passage of the Idaho law the Supreme Court ruled on the Miller case which conflicted with the Idaho law." SER-74. He further explained that "[t]he Governor [had] asked the Attorney General to prepare a bill to conform the Idaho law with the Supreme Court decision." *Id.*

The proposed 1976 bill contained a new definition of "harmful to minors," built around language taken from the *Miller* test. With respect to *Miller*'s first prong:

3

- *Miller* asks "whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest." 413 U.S. at 24 (cleaned up).

- The 1976 bill applies only if a work "appeals to the prurient interest of minors as judged by the average person, applying contemporary community standards." SER-71.

With respect to the second prong:

- *Miller* asks "whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law." 413 U.S. at 24.

- The 1976 bill applies only if a work "[d]epicts or describes representations or descriptions of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse which are patently offensive," and then goes on to specifically list the types of sexual conduct at issue. SER-71.

And with respect to the third prong:

- *Miller* asks "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. at 24.

- The 1976 bill provides, "Nothing herein contained is intended to include or proscribe any matter which, when considered as a whole, and in context in

4

which it is used, possesses serious literary, artistic, political or scientific value for minors." 1976 Idaho Sess. Laws ch. 81, § 15.

After the deputy attorney general's testimony concluded, the committee voted the bill to the floor with a "DO PASS" recommendation and only one recorded vote against. SER-74–75. The bill was later passed and signed into law, and it is the source of Idaho Code § 18-1514 and the definition of "harmful to minors" that Northwest is challenging in this case.

Section 18-1514's definition of "harmful to minors" was enforced through the next section in the code, § 18-1515, which had been enacted as part of the 1972 statute. Establishing the misdemeanor of "disseminating material harmful to minors," § 18-1515 prohibited distribution to minors of several specified categories of work, so long as they were "harmful to minors":

> (a) Any picture, photograph, drawing, sculpture, motion picture film, or similar representation or image of a person or portion of the human body which depicts nudity, sexual conduct or sado-masochistic abuse and which is harmful to minors; or
>
> (b) Any book, pamphlet, magazine, printed matter however reproduced, or sound recording which contains any matter enumerated in paragraph (a) hereof, or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sado-masochistic abuse and which, taken as a whole, is harmful to minors . . .

After these two lists came a catchall: "(c) any other material harmful to minors," with "material" defined in § 18-1514. However, the prohibition did not apply to schools or

libraries: § 18-1517(1)(d), also enacted in 1972, provided an affirmative defense to any defendant who "was a bona fide school, college, university, museum or public library, or was acting in his capacity as an employee of such an organization or a retail outlet affiliated with and serving the educational purposes of such an organization."

Over the next 49 years, § 18-1514 and § 18-1515 were enforced in a small handful of reported cases. *See* ER-35–36 (collecting cases). So far as the reported cases indicate, the statutes' constitutionality was never challenged.

## II. Idaho Applies Its Obscenity Law, Civilly, to Schools and Libraries

In 2024, Idaho passed H.B. 710. The new statute amended the 1976 definition of "harmful to minors" and created § 18-1517B, which for the first time made the law enforceable against schools and public libraries.

The amendments to the definition of "harmful to minors" are not at issue in this case—they did not broaden the statute but narrowed it, aiming to bring it into compliance with Supreme Court case law after *Miller*.[1] Idaho State Senate, State Affairs Hearing at 0:18:22 (Mar. 20, 2024) (senate sponsor saying the bill "complies with the modified *Miller* test based on Supreme Court rulings").[2] Specifically, the amendments provided (1) that simply appealing to sexual desire was not sufficient to constitute

---

[1] Specifically *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985), and *Pope v. Illinois*, 481 U.S. 497 (1987).

[2] Available for download at: https://insession.idaho.gov/IIS/2024/Senate/Committee/State%20Affairs/240320_ssta_0800AM-Meeting.mp4.

prurient interest, and (2) that serious value could not be based on local standards. H.B. 710, 67th Leg., 2nd Reg. Sess. (Idaho 2024); *see also* Senate State Affairs Hearing at 0:09:45. These amendments further demonstrated the Legislature's intent to work within the guardrails set by the Supreme Court.

The part of the 2024 bill that led to this case is § 18-1517B, the new civil enforcement mechanism against schools and public libraries. Using language taken directly from the 1972 act's misdemeanor provision, the 2024 bill instructed schools and public libraries not to "promote, give, or make available to a minor" any of the following specifically defined works:

> (a) Any picture, photograph, drawing, sculpture, motion picture film, or similar representation or image of a person or portion of the human body which depicts nudity, sexual conduct or sado-masochistic abuse and which is harmful to minors; or
>
> (b) Any book, pamphlet, magazine, printed matter however reproduced, or sound recording which contains any matter enumerated in paragraph (a) hereof, or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sado-masochistic abuse and which, taken as a whole, is harmful to minors . . .

Idaho Code § 18-1517B(2). Like the 1972 misdemeanor provision, the 2024 statute then adds a catch-all: "(c) Any other material harmful to minors."

Unlike the 1972 act, however, the 2024 statute is not criminally enforceable. The only cause of action it gives the Attorney General and county prosecutors is the ability to seek "injunctive relief against any school or public library that violates" the statute,

providing that any injunction should be "sufficient to prevent the defendant" from committing further violations. *Id.* at (5). The statute does not allow the Attorney General or county prosecutors to seek damages or impose penalties; it does not even provide for a fee award. *See id.*

Instead, only private parties are entitled to seek damages under the statute: "Any minor, parent, or legal guardian who prevails in an action brought under this section may recover two hundred fifty dollars ($250) in statutory damages as well as actual damages and any other relief available by law . . . ." Idaho Code § 18-1517B(4). No such private parties were named as defendants in Northwest's complaint, *see* ER-60–116, and none are before the Court in this appeal.

## III. Northwest Sues

The 2024 bill was signed by Governor Little on April 10, 2024. Northwest waited until the week before the school year was set to begin and then sued the Attorney General and the county prosecutors of Ada County and Blaine County to enjoin them from enforcing the statute. Northwest asserts only one claim that remains at issue in this appeal: a First Amendment overbreadth claim.[3]

---

[3] The other First Amendment claims brought by individual parents, minors, and non-public libraries were dismissed as those Plaintiffs lacked standing. *See* ER-22–24. Denial of the preliminary injunction as to the Fourteenth Amendment vagueness claim has not been appealed.

Northwest and the other plaintiffs moved for a preliminary injunction, and the Attorney General and other appellees moved to dismiss. The district court granted in part the motions to dismiss and denied the motion for preliminary injunction.

As relevant here, the district court appropriately walked through the two-part overbreadth test, first determining the law's scope. ER-28–30 (citing *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). The court compared the statute's definitions in § 18-1514 to the Supreme Court's *Miller* test as applied to minors through *Ginsberg v. New York*, 390 U.S. 629 (1968). Applying the canons of statutory construction that Idaho uses in in interpreting Idaho law—which importantly construe *any* ambiguity in favor of a constitutional result, and in favor of furthering legislative intent—the court found the law complied with *Miller*. *Id.* at *12–14.

Under the second part of the overbreadth test, because the law tracks *Miller* and therefore operates within the constitutional bounds of obscenity, the district court found that, "[a]s long as [the statute] incorporates the three central prongs under *Miller*, the law contains a backstop which prohibits its application to non-obscene speech." *Id.* at *15. Thus, the "hypothetical applications" brought forward by plaintiffs were unlikely, and the statute was not overbroad. *Id.* As a result, the court found that plaintiffs were unlikely to succeed on the merits of their First Amendment claim, and the balance of preliminary injunction factors ran against them. *Id.* at *16–17.

Northwest appealed. ER 117–122.

## STATEMENT OF THE ISSUES

1.    Whether Northwest is likely to succeed in proving that Idaho's law against distributing obscene materials to minors is unconstitutionally overbroad.

2.    Whether Northwest has satisfied the other equitable requirements for a preliminary injunction.

## STANDARD OF REVIEW

This Court reviews the district court's denial of the preliminary injunction for abuse of discretion. *Doe v. Snyder*, 28 F.4th 103, 106 (9th Cir. 2022). In assessing the district court's decision, the Court reviews factual findings for clear error. *Id.* Issues of law are reviewed de novo. *Nobert v. City and Cnty. of S.F.*, 10 F.4th 918, 927 (9th Cir. 2021) (citation omitted).

To obtain a preliminary injunction, plaintiffs must show that they are likely to succeed on the merits, that they face irreparable harm without an injunction, and that both the balance of harms and public interest are in their favor. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). When applying the *Winter* factors, likelihood of success on the merits is "a threshold inquiry and is the most important factor." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). If plaintiffs cannot meet the demand of showing likelihood of success on the merits, the Court "need not consider the other factors." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

## SUMMARY OF THE ARGUMENT

Northwest has only one claim on appeal: an overbreadth claim. To show it is likely to prevail for purposes of a preliminary injunction, Northwest must show that the Idaho law prohibits so many constitutionally protected works that its unconstitutional applications are substantially disproportionate to the constitutional ones.

Further, Northwest must show that the unconstitutional applications are unambiguously required by the statutory text—if the statute is ambiguous and a reasonable interpretation is available that avoids conflicts with the Constitution, both the legislative history of the statute and Idaho's rules of statutory interpretation require the Court to use the interpretation that makes the statute constitutional.

In this case, Idaho's statute is constitutional, expressly incorporating every important phrase from the *Miller* test. Northwest disagrees on roughly six points, but none of the six has merit.

1. Contrary to Northwest's arguments, the statute's two uses of the word "includes" do not leave the statute without any discernible outer limit. Where "includes" introduces a detailed definition (as it does here), it strongly implies that matters outside the definition are not included—an implication further supported by legislative intent and Idaho's rules of construction.

2. The statute both expressly and implicitly applies *Miller*'s "prurient interest" prong to works taken as a whole—at no point does the statute suggests a

work can be banned when merely a portion of it appeals to the prurient interest.

3.  By using the word "homosexuality," the statute does not prohibit depictions of gay couples holding hands or raising children. In context, "homosexuality" refers exclusively to sexual conduct, and it was included because, when the statute was passed in the 1970s, "sexual intercourse" referred primarily to heterosexual acts.

4.  The location of the statute's serious value clause inside a particular subparagraph does not limit its application to that subparagraph. The statutory text, legislative history, policy, and Idaho's interpretive rules all support a reading that "nothing herein contained" means "nothing in this statute" rather than "nothing in this subparagraph."

5.  The use of the catch-all word "matter" in the serious value clause broadens the serious value exception and thus narrows the statute's scope; it does not permit courts to prohibit individual portions of a work when the work as a whole has serious value.

6.  Finally, the statute does not violate *Pope v. Illinois* or other binding precedent by assessing a work's serious value in the context in which it is used, including the age of the minors the work is given to. Under Supreme Court precedents *Ginsberg* and *Erznoznik*, the scope of First Amendment protection enjoyed by

12

a given minor depends on a minor's capacities, which are heavily influenced by the minor's age.

Finally, Northwest lacks any irreparable harm because the statute has not burdened or chilled it in any way—there is no real threat of enforcement by the Attorney General, and the worst harm the Attorney General's enforcement could inflict on Northwest is an injunction telling it to stop violating the statute, since the statute does not give the Attorney General the right to seek damages or fees. On the other hand, the universal injunction Northwest requested in the district court would prevent the Attorney General from enforcing the statute against anyone, no matter how obscene the material the defendant is distributing against minors—a serious harm to Idaho's sovereign interest in enforcing its laws. *Cf. Jacobellis v. Ohio*, 378 U.S. 184, 195 (1964).

## ARGUMENT

### I. The Statutes Are Constitutional Unless Unambiguously Overbroad

Northwest's appeal is a pure facial overbreadth challenge. ER-110–12 It has to be a facial challenge, because Northwest does not provide the necessary facts for an as-applied challenge—it does not identify any specific work it wants to provide to minors that it claims the statute unconstitutionally prohibits. ER-44–45; ER-49–51; ER-54–58. And Northwest's claim has to be an overbreadth challenge, because ordinary facial challenges require plaintiffs to show that a statute is unconstitutional in all its applications, *United States v. Hansen*, 599 U.S. 762, 769 (2023) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)), and Northwest has not contested that the statute

13

applies to many works that are obscene with respect to minors and may constitutionally be proscribed.

To prevail on this facial overbreadth challenge, it is not enough for Northwest to identify scattered points where Idaho's statute *could* be interpreted as violating *Miller*. *Cf. Tucson v. City of Seattle*, 91 F.4th 1318, 1322 (9th Cir. 2024) (no overbreadth where only a single unconstitutional application had been identified). Instead, Northwest has to clear two high hurdles: it has to show (1) that the statute has so many unconstitutional applications as to be facially overbroad, and (2) that these applications are unambiguously required by the statute—required with sufficient clarity to overcome the legislature's undisputed intent to comply with *Miller* and Idaho's strong presumption that statutes should be given a constitutional construction whenever possible.

## A. Overbreadth requires invalid applications to outweigh valid ones.

Invalidating a statute for overbreadth is "strong medicine that is not to be casually employed." *United States v. Williams*, 553 U.S. 285, 292–93 (2008) (citations and internal quotations omitted). It is permitted only when a statute prohibits a "substantial" amount of protected speech when weighed against its "plainly legitimate sweep," *Id.* at 292—in other words, "'the ratio of unlawful-to-lawful applications' must be 'lopsided enough to justify the strong medicine.'" *Ariz. Att'ys for Crim. Just. v. Mayes*, 127 F.4th 105, 110 (9th Cir. 2025) (quoting *Hansen*, 599 U.S. at 764); *accord Hansen*, 599 U.S. at 770 (a statute is overbroad only if unconstitutional applications are "substantially disproportionate" to lawful ones).

Further, the statute's unconstitutional applications must be "realistic, not fanciful." *Hansen*, 599 U.S. at 770. And, significantly, "[i]n determining whether an unconstitutional application is realistic, courts may consider whether that application has occurred in the past." *Tucson*, 91 F.4th at 1327–28 (citing *Williams*, 553 U.S. at 302).

Northwest has not attempted to meet these standards; in fact, it does not even cite them. Instead it merely identifies five ways in which it believes the statute is broader than the *Miller* test while generally failing to give concrete examples of scenarios where the statute prohibits constitutionally protected content. Even if it had identified such scenarios, it would have to acknowledge that every one of them was entirely hypothetical: all the flaws that Northwest alleges have been in the statute since 1976 (and some even older), and yet Northwest fails to identify a single prosecution in those 49 years that violated *Miller* under any of Northwest's theories. To the Attorney General's knowledge, no such prosecutions have ever occurred—so far as the reported cases show, every prosecution under the statute concerned material that was actually obscene. *See State v. Byington*, 977 P.2d 211, 215 (Idaho Ct. App. 1998); *see also State v. Parsons*, 543 P.3d 465, 468 (Idaho 2024).

Finally, even if Northwest had identified a set of concrete scenarios where the statute realistically applies, it has made no effort to compare those scenarios to the statute's "plainly legitimate sweep." They will find that comparison difficult, since in this case the statute's "legitimate sweep" covers internet pornography, little or none of which is constitutionally protected with respect to minors. *Jacobellis*, 378 U.S. at 195

15

(recognizing "legitimate and indeed exigent interest" in preventing children from viewing material harmful to minors); *Ginsberg*, 390 U.S. at 637–39; *see also United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 215 (2003) (Kennedy, J., concurring). It is so difficult to estimate the amount of pornography on the internet that few people have tried, but the available numbers hint at the order of magnitude: a 2011 study found that 4% of the top million websites were pornographic, and the internet contains roughly 1.2 billion websites[4] and 149 trillion gigabytes of data.[5] Ogi Igas & Sai Gaddam, *A Billion Wicked Thoughts* (2011). Even these figures are collectively off by a factor of 100, they suggest that the internet contains hundreds of thousands of pornographic websites and billions of gigabytes of pornographic data—a legitimate sweep for the statute that dwarfs the statute's potentially unconstitutional applications like the World Trade Center beside a bungalow.

Instead of doing the hard work that the overbreadth standard requires, Northwest claims that anytime a statute is broader than the *Miller* test, it "necessarily" reaches a substantial amount of constitutionally protected material. App. Br. at 59. It

---

[4] NJ, *How Many Websites Are There in the World?*, Siteefy (Mar. 20, 2025), https://tinyurl.com/tn8vcrmc (roughly 1.2 billion websites, 194 million of which are active as of January 2025).

[5] Petroc Taylor, *Volume of data/information created, captured, copied, and consumed worldwide from 2010 to 2023, with forecasts from 2024 to 2028*, Statista (Nov. 21, 2024), https://tinyurl.com/3adc9uy6 (2024 total data consumed globally forecasted at 149 zettabytes).

claims this supposed rule can be derived from *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1213 (9th Cir. 2010).

But *Powell's Books* did not announce a *per se* rule that any deviation from *Miller* results in facial invalidation of the statute. In that case, the Oregon statute at issue simply omitted two of the *Miller* test's three prongs, and it was not subject to any narrowing construction. 622 F.3d at 1213–15. More to the point, *Powell's Books* did its homework, explaining *why* the Oregon statute's unconstitutional applications outweighed the constitutional ones. *See id.* at 1213–14 (describing by example the consequences of omitting the serious value prong); 1214–15 (noting that a standard of "titilat[ion]" by definition reaches far beyond "prurien[ce]"). Northwest does not even attempt that sort of explanation.

### B. Ambiguous Idaho statutes are interpreted to be constitutional.

If Northwest can clear the first hurdle and demonstrate that its proposed interpretations would render the statutes unconstitutionally overbroad, then it still faces the second hurdle: proving that the statute not only permits those interpretations but requires them unambiguously. If it is possible to give the statute an interpretation that is not unconstitutionally overbroad, then Northwest loses.

The reason statutory ambiguity defeats Northwest's claims is that, "whenever possible," Idaho courts "construe a statute so as to achieve a constitutional result," *Bradbury v. Idaho Jud. Council*, 28 P.3d 1006, 1011 (Idaho 2001); *accord In re 1979 Valuation of Parcel No. R2348750330 of Crow*, 662 P.2d 1125, 1132 (Idaho 1983) ("It is a well-

established rule of law that a statute must be construed, if possible, so as to achieve a constitutional result."). "[A]n appellate court is obligated to seek an interpretation of a statute that upholds its constitutionality." *State v. Bundy*, 566 P.3d 445, 456 (Idaho 2025) (cleaned up).[6]

The Idaho Supreme Court has reaffirmed this canon and its cousins in numerous cases going back at least to the 1940s. *See, e.g.*, *Leonardson v. Moon*, 451 P.2d 542, 552 (Idaho 1969) ("It is the duty of the courts to uphold the constitutionality of legislative enactments when that can be done by reasonable construction."); *City of Lewiston v. Mathewson*, 303 P.2d 680, 682 (Idaho 1956) ("A statute should not be held void for uncertainty if any practical interpretation can be given it."); *Scandrett v. Shoshone Cnty.*, 116 P.2d 225, 227 (Idaho 1941) ("[I]n construing statutes, we should assume that the legislature intended to enact a valid and constitutional law and for that reason should give the act as favorable interpretation as possible.").

The basis for this canon is a strong presumption that the legislature intends to act constitutionally. *Scandrett*, 116 P.2d at 227. In this case, however, the Court has more to go on than a presumption: it has the actual legislative history of the statutes. The key statute—the 1976 bill containing the definition of "harmful to minors" and every phrase that Northwest considers overbroad—was only adopted because Governor

---

[6] When a federal court interprets a state statute, it applies that state's canons of construction. *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458, 485 (9th Cir. 2024).

Andrus asked Attorney General Kidwell to draft a new bill conforming Idaho's obscenity law to *Miller*, SER-74, and, as discussed in more detail below, the 1976 bill quotes *Miller* constantly, further evincing an intent to comply. *Stokeling v. United States*, 586 U.S. 73, 80 (2019) (when statutory language is "transplant[ed]" from "another legal source . . . it brings the old soil with it"); *see also Doolittle v. Morley*, 292 P.2d 476, 480 (Idaho 1956) (legislature "will be presumed not to intend to overturn long-established principles of law, and the statute will be so construed") (citation omitted).

In 2024, when the legislature amended the definition of "harmful to minors" for the first time since 1976, it further narrowed the definition with the express purpose of complying with the Supreme Court's more recent obscenity cases. *See* Idaho State Senate, State Affairs Committee Hearing (Mar. 20, 2024).[7]

Idaho courts consider a statute ambiguous if it is "capable of more than one reasonable construction," *State v. Yzaguirre*, 163 P.3d 1183, 1187 (Idaho 2007) (citation omitted), and Idaho courts construe ambiguous statutes "to give effect to the legislative intent." *In re Williamson*, 19 P.3d 766, 769 (Idaho 2001); *accord State v. Staples*, 548 P.3d 375, 378 (Idaho Ct. App. 2023). As a matter both of law and of historical fact, the Idaho Legislature intended these laws to comply with *Miller*. Therefore, to prevail, Northwest must somehow demonstrate that the statute is not reasonably susceptible to any

---

[7] Available for download at: https://insession.idaho.gov/IIS/2024/Senate/Committee/State%20Affairs/240320_ssta_0800AM-Meeting.mp4.

construction that would make it constitutional—that the legislature unambiguously failed to achieve its intent.

Northwest cannot make that showing. Even on its own telling, the statutes are ambiguous. SER-116 ("H.B. 710 piles ambiguities atop ambiguities.").

## II. Idaho's Statutes Are Not Overbroad

The Idaho legislature drafted its obscenity statutes to comply with *Miller*, and it succeeded. As applied to minors, *Miller* says works cannot be prohibited unless,

1. taken as a whole, they appeal to the prurient interest of minors;

2. they depict and describe sexual conduct or excretory functions specifically defined by state law, in a patently offensive way; and

3. taken as a whole, they lack serious value for minors.

413 U.S. at 24. Idaho's statutes, reasonably interpreted, only prohibit works that satisfy all three requirements.

Northwest disagrees. It argues first that Idaho's statutes fail to comply with *Miller* because they do not set any "discernable limit on the material covered" by the statutes. App. Br. at 15. It then challenges Idaho's law on all three prongs.

1. With respect to prong one, Northwest argues that Idaho's law fails to take works as a whole—that it bans works if any portion of them appeals to the prurient interest.

2.  With respect to prong two, Northwest argues that the law's reference to "homosexuality" unconstitutionally prohibits depictions of nonsexual matters like same-sex handholding.

3.  With respect to prong three, Northwest argues that the law's language protecting works with "serious value" applies only to half its prohibitions and not to works depicting "intimate sexual acts." It also argues Idaho's "serious value" language is inadequate because it considers the "context in which [the work] is used."

As explained below, each of these arguments fails.

## A. The legislature set a discernable limit on the statute's scope.

Northwest's first argument is that, because the statute employs potentially non-exclusive language, it unconstitutionally "identifies only the beginning of the State's regulatory authority, rather than its outermost limit." App. Br. at 17. Specifically, Northwest objects that the statutory definition of "harmful to minors" twice uses the word "includes": once at the top of § 18-1514(6) when it says "'[h]armful to minors' *includes* within its meaning," and once in paragraph (6)(b) when it introduces a list of examples with the words "*includes*, but is not limited to." Idaho Code § 18-1514 (emphasis added); *see also* App. Br. at 15–18. Based on these two uses of the word "includes," Northwest contends the statute lacks "any discernable boundary on the state's authority." App. Br. at 18.

Before considering the details of this argument, it is worthwhile to review the entire text of the statute's definition of "harmful to minors":

> "Harmful to minors" *includes* in its meaning the quality of any material or of any performance or of any description or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse, when it:
>
> (a) Appeals to the prurient interest of minors as judged by the average person, applying contemporary community standards; and
>
> (b) Depicts or describes representations or descriptions of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse which are patently offensive to prevailing standards in the adult community with respect to what is suitable material for minors and *includes*, but is not limited to, patently offensive representations or descriptions of:
>
>> (i) Intimate sexual acts, normal or perverted, actual or simulated; or
>>
>> (ii) Masturbation, excretory functions or lewd exhibition of the genitals or genital area. Nothing herein contained is intended to include or proscribe any matter which, when considered as a whole, and in context in which it is used, possesses serious literary, artistic, political or scientific value for minors.

Idaho Code § 18-1514(6) (emphasis added). This definition contains one hundred sixty-three words in five separate statutory subdivisions, key phrases borrowed directly from *Miller*, and clinical-sounding language like "excretory functions" and "genital area." It also employs half a dozen additional terms—"nudity," "sexual excitement," "sado-masochistic abuse," and so on—that are further defined elsewhere in the statute.

It is simply not plausible that this lengthy, intricate statutory text was adopted with any other intent than precisely defining the scope of the statutory prohibitions.

### 1. In this definition, "includes in its meaning" is restrictive.

Northwest's response is that the word "includes" is inclusive rather than exclusive, and therefore the statute extends open-endedly to matters not expressly described in its text: supposedly the statute's use of "includes" was "intentionally expansive . . . . [T]he word 'includes' does not connote limitation and is frequently, if not generally used as a word of extension or enlargement rather than as one of limitation or enumerations." App. Br. at 16. Northwest is mistaken, for two reasons.

*First*, as Northwest admits, the word "includes" is not expansive in every case; sometimes it introduces a closed list or definition. *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 125 (1934) ("It may be admitted that the term 'includes' may sometimes be taken as synonymous with 'means,'"); *accord Blankenship v. W. Union Tel. Co.*, 161 F.2d 168, 169 (4th Cir. 1947) ("includes" used as "a term of limitation indicating what belongs to a genus" by defining "employee" in the Fair Labor Standards Act); *Nelson v. Kendrick*, 466 N.W.2d 402, 404 (Mich. Ct. App. 1991) ("includes" precedes exclusive definition of "child custody dispute"). One of Northwest's own citations acknowledges as much, saying that "includes" is "frequently, if not generally used as a word of extension"—the quote says "frequently" rather than "always." App. Br. at 16.

Drafters using the word "includes" know there is a risk it will be interpreted exclusively, so they often write phrases like "includes, but is not limited to." The 1976

statute itself uses the words "is not limited to" in paragraph (6)(b), indicating that the legislature knew it needed to be clear if it wanted the list that followed to be non-exclusive. On the other hand, when the legislature began subsection (6) with the words "includes in its meaning," it omitted the phrase "is not limited to"—suggesting it did not intend an expansive interpretation for that more important use of "includes."

As argued in Section I.B above, the tie does not go to the plaintiffs. If the phrase "includes in its meaning" can reasonably be read as exclusive, then the Court has a "duty" to read it as exclusive if doing so is necessary to save the statute. *Leonardson*, 451 P.2d at 552.

*Second*, the presumption that "includes" is non-exclusive most often applies when the word is used to introduce a list, and its application is highly context dependent. *See e.g., United States v. Herrera*, 974 F.3d 1040, 1048 (9th Cir. 2020) (collecting cases applying canon to lists); *accord Blankenship*, 161 F.2d at 169. In this case, the second time the statute uses the word "includes," the word is indeed used to introduce a list, and the statute makes the list expressly non-exclusive by using the phrase "not limited to." Idaho Code § 18-1514(6)(b). But the first, more important use of "includes" does not introduce a list; it introduces a single noun phrase ("the quality of any material . . ."), followed by a restrictive subordinate clause ("when it . . . .") that then takes up the rest of the definition. *See id.* § 18-1514(6).

Simplified, the definition reads as follows: "The phrase 'harmful to minors' includes depictions of sex or nudity when the depictions satisfy a list of further

24

requirements based on the *Miller* test." The definition says "when" rather than "only when," but the "only" can fairly be inferred: the text contains no breath of a suggestion that "harmful to minors" might also include works that depict violence or blasphemy instead of sex and nudity, or that works depicting sex or nudity might somehow still be included in the definition despite failing to satisfy the additional, *Miller*-based requirements. If the definition's lengthy, detailed requirements were optional, there would have been no reason to draft them. *Cf. Carcieri v. Salazar*, 555 U.S. 379, 391–92 (2009) (declining to read "includes" in a definition as open-ended when Congress "explicitly and comprehensively defined the term").

### 2. Even if "includes" is open-ended, the statute is constitutional.

Even when "includes" is open-ended, it does not follow that anything goes. Generally, courts will only add items to a non-exclusive list if they have something in common with the explicit list members—some general principle needs to unite the members of the list. For example, in *Dong v. Smithsonian Inst.*, 125 F.3d 877, 879–80 (D.C. Cir. 1997), Plaintiff tried to sue the Smithsonian Institute under the Privacy Act, which requires that a Defendant be an "agency" under the Act. The Act pointed to a statutory definition, which began with the word "includes" but contained specific categories such as "any executive department" or "[any] Government controlled corporation" alongside a catchall "or other establishment in the executive branch." *Id.* at 878, 880. While the Court recognized that "the word 'includes' normally does not

25

introduce an exhaustive list but merely sets out examples of some 'general principle'" in the case of the Smithsonian, it was not enough that the word "includes" not be exhaustive. *Id.* at 880. There needed to be an "alternative general principle" inherent in that list that would include the Smithsonian, which principle Plaintiff did not supply. To the extent there was a general principle in the statute, i.e., "belonging to the executive branch," it did not sweep up the Smithsonian even if the Smithsonian was conceivably related to the other government entities included. *Id.*

In this case, if there are any unexpressed members of the various lists in the definition, they would have to be things similar to "nudity, sexual conduct, sexual excitement, or sado-masochistic abuse"; in short, they would have to be things that might plausibly qualify as obscenity under *Miller*.

Further, assuming for the sake of argument that the definition silently includes material that is not obscene under *Miller*, Northwest still has to satisfy the overbreadth test. It first needs to define the content that *both* comes close enough to the statutory definition to be prohibited and *yet* strays far enough from *Miller* to be constitutionally protected. It then has to prove that this penumbra of protected content is "substantial" enough to render the statute's "plainly legitimate sweep" invalid. *United States v. Williams*, 553 U.S. 285, 292 (2008). Northwest has not tried—it has not identified even a single work, real or hypothetical, that is plausibly "harmful to minors" under the statute and yet constitutionally protected under *Miller*.

26

### 3. The second use of "includes" is also constitutional.

If Northwest claims that the expressly non-exclusive list in § 18-1514(6)(b)—the one that says "includes, but is not limited to"—independently renders the statute overbroad, it has no plausible argument for that conclusion. The non-exclusive list appears in the statute only in the midst of several clearly exclusive requirements that would still apply to any unexpressed, implicit list members.

To put the point less abstractly, the open-ended list already includes "intimate sexual acts," "masturbation, excretory functions," and so on. Idaho Code § 18-1514(6)(b). Any court attempting to add (for example) "racial slurs" to the open-ended list would still have to satisfy the requirement at the beginning of subsection (6) that a work must depict "nudity, sexual conduct, sexual excitement, or sado-masochistic abuse." It would also have to satisfy the requirement in paragraph (6)(a) that the work must appeal to the prurient interest of minors, plus the further requirement earlier in (6)(b) that the work must depict nudity or sex in a manner "patently offensive to prevailing standards in the adult community." Even if a court could somehow add "racial slurs" or other completely unrelated material to the open-ended list, that material would still not be prohibited unless it satisfied the first two prongs of the *Miller* test.[8]

---

[8] Prong three will be addressed below.

**B. The statute satisfies the first prong's "taken as a whole" requirement.**

Most of *Miller*'s first prong is expressly incorporated into the statute's definition of "harmful to minors" (discussed above), with most of the definition's key phrases drawn directly from *Miller*: "prurient interest," "average person," and "contemporary community standards." *Compare* Idaho Code § 18-1514(6)(a); *with Miller*, 413 U.S. at 24.

Northwest objects that one phrase from the first prong is missing: the one that requires courts to consider "the work, taken as a whole." *Miller*, 413 U.S. at 24. According to Northwest, Idaho's statute is more granular than *Miller* allows—it allegedly considers and prohibits individual portions of a work, rather than the work as a whole, and thereby violates a series of Supreme Court and Ninth Circuit precedents starting with *Roth v. United States*, 354 U.S. 476 (1957). App. Br. at 33–38.

However, for a work to be prohibited under Idaho's statute, it is not enough for it to be "harmful to minors" under § 18-1514—it must also fall into one of the categories of prohibited material listed a few sections later in § 18-1517B. That section, whose relevant portions are copied verbatim from the 1972 statute, prohibits schools and public libraries from distributing the following:

> (a) Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body that depicts nudity, sexual conduct, or sado-masochistic abuse and that is harmful to minors;
>
> (b) Any book, pamphlet, magazine, printed matter however reproduced, or sound recording that contains any matter pursuant to paragraph (a) of this subsection or explicit

> and detailed verbal descriptions or narrative accounts of
> sexual excitement, sexual conduct, or sado-masochistic
> abuse and that, taken as a whole, is harmful to minors; or
>
> (c) Any other material harmful to minors.

Idaho Code § 18-1517B(2).

This statutory text does not explicitly say whether prurient interest must always be assessed at the level of a whole work, but a close reading suggests that is exactly what the statute requires.

Begin with paragraph (2)(a). That paragraph prohibits distribution of "[a]ny picture, photograph," and so on "that depicts nudity, sexual conduct, or sado-masochistic abuse *and that is harmful to minors*." *Id.* (emphasis added). By its plain language, this paragraph does not ban pictures, photographs, or movies when *portions* of them are harmful to minors; instead, it says the picture, photograph, or movie *itself* must be harmful to minors, a requirement that can be applied only by considering the picture, photograph, or movie as a whole.

Further, paragraph (2)(a) generally addresses individual visual representations and not larger works containing visual representations—books with pictures or the like.[9] Those are addressed in paragraph (2)(b), which prohibits "[a]ny book, pamphlet, magazine, printed matter however reproduced, or sound recording that contains any

---

[9] The exception is "motion picture film[s]," which, as argued above, are still only prohibited if they themselves (rather than some portion of them) are harmful to minors. *See* Idaho Code § 18-1517B(2)(a).

matter pursuant to paragraph (a)," as well as similar works containing "narrative accounts of sexual excitement, sexual conduct, or sado-masochistic abuse." And unlike paragraph (2)(a) and the "harmful to minors" definition, paragraph (2)(b) does explain how the prurient interest of such works must be assessed—they are prohibited only if they are "harmful to minors" when "*taken as a whole*." Idaho Code § 18-1517B(2)(b) (emphasis added). Whatever problems Northwest imagines in paragraph (2)(a), paragraph (2)(b) clearly complies with the first *Miller* prong.

That leaves only paragraph (2)(c), the catch-all, which prohibits "[a]ny other material harmful to minors." The catch-all is less capacious than it seems, however, because "material" is a defined term: "anything tangible which is harmful to minors, whether derived through the medium of reading, observation or sound." Idaho Code § 18-1514(7). That language does not expressly say whether or not harmfulness must be assessed with respect to works "taken as a whole," but the phrase "anything tangible which is harmful to minors" is perfectly consistent with the Attorney General's interpretation, i.e., that the whole "tangible" "[]thing" needs to be harmful to minors, and not merely a portion of it.

Further, the catch-all applies only to "*other* material harmful to minors" and not to material already covered by the preceding paragraphs; if the "material" at issue is a "visual representation" or "printed matter" or a "sound recording," then it falls under (2)(a) or (2)(b) and the catch-all does not apply. It is therefore difficult to imagine scenarios where the catch-all actually does apply—how many tangible objects that are

accessed through "reading, observation or sound" do not already qualify as a visual representation under (2)(a) or as printed matter or a sound recording under (2)(b)? Certainly, the catch-all cannot be used to ban portions of a book or printed matter without considering the book or printed matter as a whole; if it could, then it would render the (2)(b)'s "taken as a whole" requirement superfluous.

### 1. Depictions and representations

As argued above, the statute requires a work's "prurient interest" to be assessed based on the work as a whole, and this conclusion is further supported by the text of the definition of "harmful to minors." Under that definition, a "material," "performance," "description," or "representation" is harmful to minors only if "it"— i.e., the entire material, performance, etc.—appeals to the prurient interest. Idaho Code § 18-1514(6). The statute does not say material is harmful to minors "when *part of it* appeals to the prurient interest."

Northwest complains that the phrase "description or representation" from the definition could be interpreted to refer to a small portion of a larger work—one frame from a movie or a single paragraph from a book. App. Br. at 37. But this argument ignores that "description or representation" appears only in the definition section and not in the actual prohibition; if the Attorney General brought an enforcement action based on a single short "depiction or representation" inside a book, the defendant would quickly win dismissal by pointing out that books are prohibited only if they are harmful to minors when "taken as a whole." Idaho Code § 18-1517B(2)(b).

31

Further, "depiction or representation" does not refer unambiguously to portions of a work. *Paradise Lost* might easily be described as a depiction or representation of the fall of Adam and Eve; *All's Quiet on the Western Front* is often hailed as a great depiction or representation of the horrors of war. While a single photograph can be an obscene work, *see United States v. 31 Photographs*, 156 F. Supp. 350 (S.D.N.Y. 1957), it does not follow that such a photograph continues to be a separate "depiction or representation" under the statute when it is included in a larger work—any more than a "quotation from Voltaire in the flyleaf of a book" will save or damn a work on its own. *Cf. Kois*, 408 U.S. at 231 ("We find it unnecessary to consider whether the State could constitutionally prohibit the dissemination of the pictures by themselves.").

### 2.    Ambiguity and overbreadth

In reply, Northwest will presumably dispute the foregoing reading of the statute. It may even articulate an alternative reading that—unlike its opening brief—accounts for the key textual features the Attorney General relies on above.

But, again, the tie does not go to the plaintiffs. *Miller*, and cases applying it, have never required that every prong be spelled out, just-so, in order to be construed in compliance with *Miller* and other obscenity precedents. *Hamling*, 418 U.S. 87, 98–99 (1974); *accord Roth*, 354 U.S. at 491 ("Many decisions have recognized that these terms of obscenity statutes are not precise."). It is accordingly not enough for Northwest to prove that some other reading is possible or even, looking purely at the text, that some other reading is superior. So long as the Attorney General's reading is a "reasonable

construction" of the statute, Idaho law says courts have a "duty" to choose the narrower reading so as to "uphold the [statute's] constitutionality." *Leonardson*, 451 P.2d at 552.

And, even if Northwest proves the Attorney General's reading unreasonable on some point, it still has to demonstrate that, under its interpretation, "the ratio of unlawful-to-lawful applications [is] lopsided enough to justify the strong medicine" of declaring the statute facially overbroad. *Ariz. Att'ys for Crim. Just.*, 127 F.4th at 110 (quoting *Hansen*, 599 U.S. at 764).

## C. The statute applies only to sexual conduct and excretory functions.

*Miller*'s second prong says obscenity includes only sexual materials, and Idaho law complies, again quoting *Miller* extensively.

- Under *Miller*, a work is obscene only if it "depicts or describes, in a patently offensive way, sexual conduct." 413 U.S. at 24.

- Under Idaho's statute, a work is "harmful to minors" only if it "[d]epicts or describes representations or descriptions of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse which are patently offensive." Idaho Code § 18-1514(6)(b).

*Miller* then requires that the sexual content be "specifically defined by the applicable state law," 413 U.S. at 24, and Idaho law complies by quoting *Miller* again.

- *Miller* says prohibitable sexual content includes depictions of "ultimate sexual acts, normal or perverted, actual or simulated," *id.* at 25, and Idaho's

statute changes two letters: "*in*timate sexual acts, normal or perverted, actual or simulated," Idaho Code § 18-1514(6)(b)(i) (emphasis added).

- *Miller* further allows states to prohibit depictions of "masturbation, excretory functions, and lewd exhibition of the genitals," *Miller*, 413 U.S. at 25, and Idaho's statute uses exactly the same phrase, changing "and" to "or." Idaho Code § 18-1514(6)(b)(ii).

Northwest claims this painstaking imitation of *Miller* is nevertheless still inadequate because of a separate definition earlier in the statute: the words "sexual conduct" are defined to include "any act of masturbation, *homosexuality*, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person be a female, the breast." Idaho Code § 18-1514(3) (emphasis added). According to Northwest, the inclusion of "homosexuality" in the definition of "sexual conduct" extends the statute to cover non-sexual material like a gay couple holding hands or parenting. App. Br. at 38–44.

On this point, Northwest's reading of the statute is wildly implausible.

Idaho courts apply the canon of *noscitur a sociis*, which teaches that "a word is known by the company it keeps." *Chandler's-Boise LLC v. Idaho Tax Comm'n*, 398 P.3d 180, 186 (Idaho 2017) (citations omitted). More prosaically, the canon tells courts that a word in a list should be given a meaning similar to the other terms in the list—for example, that when "homosexuality" appears in a list of sexually explicit acts, "the word refers only to homosexual intercourse as opposed to any non-sexual act." ER-33; *see*

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195–99 (2012) (Associated-words canon).

This reading is further confirmed by the function the word "homosexuality" plays in the statute—i.e., that "homosexuality" appears in a definition of the words "sexual conduct," a phrase that does not ordinarily include holding hands or co-parenting. And to make clear that the words "sexual conduct" are limited to conduct that is clearly sexual, the words "sexual conduct" are repeatedly used in lists that bring their own *noscitur a sociis* pressure to bear—for example, the list "nudity, sexual conduct, sexual excitement, or sado-masochistic abuse" in § 18-1514(6)(b), which was clearly not intended to include "kissing, holding hands, dating, cohabitating, and coparenting." App. Br. at 39.

Northwest fires back with a different canon: the rule against surplusage. Supposedly, limiting the word "homosexuality" to sexual conduct would render it redundant, since the phrases "sexual intercourse" and "physical contact with a person's clothed or unclothed genitals" also appear in the list; "homosexuality" must therefore "encompass acts *other* than same-sex 'sexual intercourse' or same-sex erotic 'physical contact.'" App. Br. at 39.

The district court rejected this argument, reasoning that *noscitur a sociis* still applies when it "results in . . . overlapping meaning." It concluded that even without the word "homosexuality," the statutory terms still contained redundant terms, noting dryly that, "[f]or example, 'sexual intercourse' usually involves 'physical contact.'" ER-33.

35

The district court understates the matter: in fact, the statute contains numerous words and phrases with similar redundancies or overlapping meanings. "Sexual conduct" and "sexual excitement" appear as separate terms in a list, despite the obvious overlap. Idaho Code § 18-1514(6)(b). "Intimate sexual acts," "masturbation," and "lewd exhibition of the genitals" likewise overlap but are still separately included—the same way they are in the *Miller* opinion. *Id.*; *see also Miller*, 413 U.S. at 25.

The statute is also full of more conventional redundancy—for example, the repeated use of the words "sexual conduct" in multiple places in the statute. Applying the statute to a particular movie, a court would need to ask

- first, whether it depicts "sexual conduct" under § 18-1517B(2)(a);

- second, turning to the definition of "harmful to minors," whether the movie is a description or representation of "sexual conduct" under the opening paragraph of § 18-1514(6);

- third, whether it depicts or describes "sexual conduct" under paragraph 18-1514(6)(b); and,

- fourth, whether it is a representation or depiction of "sexual acts" under subparagraph 18-1514(6)(b)(i).

This sort of concrete application of the statute to a particular work (which Northwest nowhere attempts) leads to two inescapable conclusions: (1) that avoiding redundancy

was not high on the 1976 Legislature's priority list, and (2) that the statute really is about works that are conventionally considered "sexual"—not about same-sex handholding.

Why, then, did the 1976 legislature include the word "homosexuality"? The answer is simple: in 1976, it would not have been unambiguously clear to an Idaho reader that "sexual intercourse" included activity between two people of the same sex. In 1977, the phrase's primary definition was "heterosexual intercourse involving penetration of the vagina by the penis: coitus." *Sexual Intercourse*, Webster's New Collegiate Dictionary (1977) (definition 1.). Even today, some dictionaries give the phrase's first definition as "coitus" or "the insertion of the penis into a vagina." *Sexual Intercourse* Definition & Meaning, Dictionary.com; *accord Sexual Intercourse*, Merriam-Webster Online (definition 1. "*heterosexual* intercourse"); *Sexual Intercourse* ("sexual activity between two people *especially*: sexual activity in which a man puts his penis into the vagina of a woman").

The word "homosexuality," by contrast, is sometimes used to denote "sexual activity with another member of the same sex"—an activity that "sexual intercourse" does not unambiguously include. *Homosexuality*, Random House Webster's College Dictionary (2d ed. 1999) (definition 2); *Homosexuality*, Webster's New Collegiate Dictionary (1977) (definition 2. "erotic activity with a member of one's own sex"). Including the word "homosexuality" in the statute resolved the ambiguity and made clear that the statute regulated depictions of sexual activity regardless of the sexes of the people engaged in it.

37

The language is not unique to Idaho. At the time of *Miller*, both Hawaii and Oregon's laws made a similar distinction between homosexual and heterosexual sex, and *Miller* cited both laws approvingly. *Miller*, 413 U.S. at 24 n.6. Oregon for instance defined "Sexual Conduct" for obscenity law as "human masturbation, sexual intercourse, or any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members *of the same or opposite sex* or between humans and animals in an act of apparent sexual stimulation or gratification." 1971 Oregon Laws ch. 743 § 255 (Or. Rev. Stat. § 167.060(10) (1971)) (emphasis added). Hawaii much more closely mirrored Idaho's statute: "masturbation, *homosexuality,* lesbianism, bestiality, sexual intercourse or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or the breast or breasts of a female for the purpose of sexual stimulation, gratification, or perversion." 1972 Haw. Sess. Laws Act 9, ch. 12 pt. II, pg. 127 (Haw. Penal Code § 1210(7) (1973)) (emphasis added).

Idaho was no different from these other states—they all intended to include same-sex sexual conduct in their obscenity statutes alongside opposite-sex conduct, and they all used language ordinary in their day to make that point clear. Nothing about the district court's interpretation is strained or unusual for statutes of a similar vintage.

\* \* \*

Even if the Court were persuaded that the word "homosexuality" was so offensive to be incompatible with *Miller*, the Court would be obliged to sever it from the statute as a matter of Idaho law. *Voyles v. City of Nampa*, 548 P.2d 1217, 1220 (Idaho

1976). But context, the Idaho Supreme Court's instruction to construe statutes constitutionally, and the legislature's manifest intent to comply with *Miller* all make clear that severance is unnecessary because "homosexuality," in the statute refers only to sexual conduct. The 1976 legislature's word choice may be "archaic," but it is not overbroad. ER-32.

### D. The statute does not prohibit works with serious value.

As the Supreme Court requires, Idaho Code § 18-1514 includes a clause protecting works of serious value.

> (ii)  . . . . Nothing herein contained is intended to include or proscribe any matter which, when considered as a whole, and in context in which it is used, possesses serious literary, artistic, political or scientific value for minors.

As usual, the key phrasing is lifted directly from *Miller*, which says a work is obscene only when "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. at 24.

Northwest argues this serious value clause is inadequate, claiming (1) that the clause applies only to the sexual acts listed in subparagraph (6)(b)(ii) and not the acts listed in subparagraph (6)(b)(i); (2) that the clause does not take works "as a whole" even though it expressly says the "matter" should be "considered as a whole"; and (3) that the clause's direction to assess a work's value "in the context in which it is used" violates the Supreme Court's instruction to assess serious value based on a national rather than a local standard.

### 1. The serious value provision applies to all works

With respect to Northwest's first argument, the clause's key word is "herein": "nothing *herein* contained is intended to include or proscribe" works of serious value. Idaho Code § 18-1514(6)(b)(ii) (emphasis added). "Herein" simply means "in this," *Herein*, Merriam-Webster Online, without saying what "this" refers to; the reader is left to determine from context whether "nothing herein" means "nothing in this subparagraph," "nothing in the Idaho Code," or something in between.

The correct answer is "nothing in the obscenity statute," and the textual clue supporting this interpretation is the word "proscribe." There would be no reason for the legislature to add "nothing herein proscribes" to a statutory provision that does not proscribe anything, but under Northwest's interpretation, that is exactly what the 1976 legislature did: supposedly, the 1976 legislature took a subparagraph with no language of proscription, within a definition section that also contains no language of proscription, and gratuitously warned the reader that this proscription-less subparagraph does not proscribe works of serious value.

Only if the "nothing herein" clause refers to the entire obscenity statute does the word "proscribe" make sense, because only once § 18-1517B is included[10] does the

---

[10] Or Idaho Code § 18-1515, the misdemeanor enforcement statute that is not at issue in this case because it does not apply to bona fide schools or public libraries.

statute proscribe any works at all. And if the "nothing herein" clause applies to all of § 18-1517B's prohibitions, then Northwest's first argument against the clause fails.

Beyond the textual clue, this interpretation is also supported by history and policy. As the Attorney General has already repeatedly argued, the 1976 legislature's records and its constant quoting of *Miller* make indisputably clear that complying with *Miller* was the new statute's entire purpose. And, policy-wise, Northwest's interpretation would turn the statute to nonsense: why, exactly, would the legislature apply serious-value protections to works depicting "masturbation, excretory functions, or lewd exhibitions of the genitals" but not to works depicting "intimate sexual acts"?

Northwest's only support for its interpretation is "structure," by which it means the serious value clause's being located inside subparagraph (6)(b)(ii) rather than set off in a separate paragraph, the way the legislature chose to set off an analogous clause in the adult obscenity statute. App. Br. at 19–20 (citing Idaho Code § 18-4101).

But, as the district court points out, mere location is not dispositive. Idaho courts are willing to correct "obvious clerical errors and misprints" where the legislative intent is clear, and here the similarity with the adult statute, rather than the difference, seems dispositive. ER-33–34; *TracFone Wireless, Inc. v. State*, 351 P.3d 599, 604 (Idaho 2015). The two statutes contain identical serious value clauses, and the two clauses both appear as "terminal sentence[s]" without any new punctuation or numerals. ER-34. The only difference between the two is the 1976 bill's missing line break and, as the district court

concluded, the "missing line break may be less relevant" than the similarities and is, "at worst, a 'scrivener's error.'" *Id.* (quoting SER-11).

Thus, the 1976 statute's serious value clause should be interpreted the same as the adult statute—i.e., as applying to the entire statute rather than a specific subpart—and the legislature's manifest intent to comply with *Miller* should not be thwarted by a 1976 typist's failure to press the carriage return.

### 2. The serious value provision applies to matters taken as a whole.

The statute's serious value clause expressly reads, "Nothing herein contained is intended to include or proscribe any matter which, *when considered as a whole . . .* possesses serious literary, artistic, political or scientific value for minors." Idaho Code § 18-1514(6)(b)(ii) (emphasis added). Northwest nonetheless argues that the statute fails to comply with *Miller*'s requirement that serious value be assessed with respect to works "taken as a whole." App. Br. at 33. Supposedly, the use of the word "matter" lets courts assess serious value with respect to individual depictions or representations inside a work, rather than whole works in their entirety. App. Br. at 35–38.

But the serious value clause says the "matter" should be taken as a whole, not a "depiction or representation." "Matter" is not defined in the statute, and the two other times it is used, both in § 18-1517B(2)(b), it is obviously meant as a catch-all:

- "any printed matter" clearly means "anything that has been printed," and

- "any matter pursuant to paragraph (a) of this subsection" clearly means "anything prohibited by paragraph (a) of this subsection."

And these uses can be used as guides to what "matter" means in the serious value clause. *See St. Luke's Magic Valley Reg'l Med. Ctr., Ltd. v. Bd. of Cnty. Comm'rs of Gooding Cnty.*, 237 P.3d 1210, 1215 (Idaho 2010) (A "word, or clause, repeatedly used in a statute, will be presumed to bear the same meaning throughout the statute, unless there is something to show that there is a different meaning intended.").

Likewise, when the statute says that it does not "proscribe any matter which, when considered as a whole . . . possesses serious literary, artistic, political or scientific value," it clearly means that it does not proscribe *anything* that possesses serious value when considered as a whole. If a book, considered as a whole, possesses serious value, then it is not proscribed; if a portion of the book possesses serious value when considered as a whole, then that portion is not proscribed. Because the serious value clause is an exception from the statutory prohibitions, its use of a broad word like "matter" makes the exception broader and the statute narrower—it means the statute prohibits fewer things, not more.

To prevail on this point, Northwest must somehow demonstrate that "matter" unambiguously refers only to individual depictions or representations inside a work and not to works as a whole, and nothing in the statute supports that construction. At the very least, the phrase "matter . . . when considered as a whole" does not unambiguously mean what Northwest claims, and if the Attorney General's interpretation is plausible,

then, as argued above, Idaho's canons and the statute's clear legislative history require the Court to choose the Attorney General's constitutionally valid interpretation rather than Northwest's unconstitutional one.

### 3. The statute permissibly uses context, including minor age, to determine whether matters have serious value as to a minor.

Northwest's final constitutional argument is that, as long as a work has serious value for a high-school senior, it cannot be illegal to give it to kindergartners. This is not an exaggeration—Northwest expressly argues that serious value is "an objective standard that does not turn on whether a work is developmentally or intellectually appropriate for . . . minors of a specific age." App. Br. at 30.

Northwest's position is sufficiently outlandish that the Third Circuit once dismissed it out of hand as something that no reasonable litigant would assert: "the Government does not argue, *as it could not*, that materials that have 'serious literary, artistic, political or scientific value' for a sixteen-year-old would have the same value for a minor who is three years old." *ACLU v. Ashcroft*, 322 F.3d 240, 253–54 (3d Cir. 2003) (emphasis added), aff'd in relevant part and remanded, 542 U.S. 656 (2004). However, Northwest does have one Eleventh Circuit case on its side, 1990's *American Booksellers v. Webb*, which concluded "that if any reasonable minor, including a seventeen-year-old, would find serious value, the material is not harmful to minors." App. Br. at 30 (quoting *Am. Booksellers v. Webb*, 919 F.2d 1493, 1504–05 (11th Cir. 1990)).

Both Northwest and *Webb* ultimately rely on the Supreme Court's decision in *Pope v. Illinois*, which held that serious value must be assessed using an objective, national standard rather than the subjective standard in a given community. 481 U.S. 497, 500–01 (1987); *see also Reno v. ACLU*, 521 U.S. 844 (1997) (serious value assessed nationally). But in applying *Pope*, Northwest and *Webb* both conflate two questions.[11]

The first question is whether serious value can be judged subjectively, by the standards actually in effect in a community, the way prurient interest can be. And the answer to that first question is clearly "no": *Pope* makes clear that serious value must be determined objectively and nationally, based on the assessment of a hypothetical reasonable person. 481 U.S. at 500–01; *see also Reno*, 521 U.S. at 873 (serious value assessed nationally). This first question is not at issue in this case, because the 2024 amendments to Idaho's statute do not permit "serious value" to be determined by community standards. *See* Idaho Code § 18-1514(6)(b)(ii). H.B. 710 § 1 (Idaho 2024) (deleting "according to prevailing standards in the adult community, with respect to what is suitable for minors.").

The second question—the one at issue in this case—is entirely separate: whether the hypothetical reasonable person reviewing the work and applying a national standard is permitted to ask whether, under the national standard, a work has serious value for

---

[11] *Webb*, incidentally, makes an additional mistake: asking whether "any reasonable minor . . . would find serious value," rather than whether a reasonable adult would find the work had serious value for minors.919 F.2d at 1504–05.

people of a particular age. And to some degree the answer is clearly "yes": Northwest does not dispute that the standard for minors can be different from the standard for adults. App. Br. at 30–31 n.16.

Just not *that* different. According to Northwest, a hypothetical reasonable person can adjust her standards of "serious value" enough to account for the difference between an 18-year-old and a 17-year-old, but she is not permitted to adjust them further and account for the difference between an 17-year-old and a 6-year-old—quoting *Webb*, Northwest insists that a work is not obscene for minors of any age if it would have serious value for "*any* reasonable minor." App. Br. at 30 (emphasis added). Nothing in *Pope* even hints at that outcome; *Pope* had nothing to do with minors at all. Likewise, when *Reno* noted that *Miller*'s "serious value" prong allows appellate courts to set a "national floor for socially redeeming value," it did not suggest that floor had to be the same for adults and for minors, or for minors of different ages. 521 U.S. at 873.

Northwest also claims its position is supported by *Virginia v. American Booksellers Association*, but it misreads the case. In *Virginia*, the bookseller plaintiffs challenging the law did not claim it was unconstitutional to ban works with respect to 6-year-olds because those works had serious value for 17-year-olds—rather, they complained about the law making it illegal to give works to 17-year-olds just because the works were harmful to 6-year-olds. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 389 (1988) ("Plaintiffs also maintained that the law is overbroad in that it restricts access by mature juveniles to works that are 'harmful' only to younger children."). The booksellers

46

admitted (and the Fourth Circuit had agreed) that it was constitutional to assess a work's serious value not just age by age but juvenile by juvenile, so long as the prohibition applied in a context where booksellers could make an individual determination of appropriateness for each child. *Id.* at 390 n.5 (citing *Am. Booksellers Ass'n, Inc. v. Virginia*, 802 F.2d 691, 695 (4th Cir. 1986)).

When *Virginia* was certified to the Virginia Supreme Court, that court did indeed conclude "that if a work is found to have a serious literary, artistic, political or scientific value for a legitimate minority of normal, older adolescents, then it cannot be said to lack such value for the entire class of juveniles taken as a whole." *Commonwealth v. Am. Booksellers Ass'n, Inc.*, 372 S.E.2d 618, 624 (Va. 1988). But it reached that holding because the Virginia statute at issue addressed the entire class of juveniles taken as a whole— unlike Idaho's law, Virginia's did not differentiate between minors of different ages, so the Virginia Supreme Court did not consider whether such differentiation was constitutional. *See id.* at 621–22 (citing Va. Code § 18.2-391) (no differentiation based on age either in defining "juveniles" or in the statute's serious value provision).

Turning to the Ninth Circuit, Northwest cites *Powell's Books* as holding that a certain book "is not obscene 'even for children under the age of thirteen'." App. Br. at 30 (citing *Powell's*, 622 F.3d at 1213–14) In context, Northwest seems to imply that *Powell's Books* held the work not obscene based on its "objective" value, without regard to children's "maturity level," but that is the opposite of the truth. Considering whether the plaintiff could constitutionally be prohibited from giving a certain book to children

under thirteen, *Powell's Books* expressly concluded that the book "does not lack serious scientific value *even for children under the age of thirteen.*" 622 F.3d at 1214 (emphasis added). In other words, it asked exactly the question Northwest argues Idaho cannot ask: whether a work has serious value for the age group it is given to, and not merely to high-school seniors a day short of their eighteenth birthdays.

With these authorities out of the way, the correct doctrinal approach to "serious value" for minors is fairly straightforward. Yes, under *Miller*, a case concerning adults, material that contains patently offensive depictions of sexual conduct is nevertheless protected if it has serious value. *Miller*, 413 U.S. at 24. But under *Ginsberg* and *Erznoznik*, "the First Amendment rights of minors are not 'co-extensive with those of adults.'" *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 214 n.11 (1975) (quoting *Tinker v. Des Moines Sch. Dist.*, 393 U.S. 503, 515 (1969) (Stewart, J., concurring)); *see also Ginsberg*, 390 U.S. at 634–35. This is because "a child—like someone in a captive audience—is not possessed of that full capacity for individual choice which is the presupposition of First Amendment guarantees." *Erznoznik*, 422 U.S. at 214 n.11 (quoting *Ginsberg v. New York*, 390 U.S. 629, 649–50 (1969) (Stewart., J., concurring)).

Further, "[i]n assessing whether a minor has the requisite capacity for individual choice[,] the age of the minor is a significant factor." *Erznoznik*, 422 U.S. 205, 214 n.11 (citing *Rowan v. Post Off. Dep't*, 397 U.S. 728, 741 (1970) (Brennan, J., concurring)). And, because the question of minor maturity, like the captive audience analogy drawn by *Erznoznik*, is a fact-specific inquiry, whether a work has serious value to a given minor

is dependent on the context in which that work is presented. *See Snyder v. Phelps*, 562 U.S. 443, 459–60 (2011) (fact specific context inquiry to determine whether father was a captive audience at son's funeral).

This sort of variation has occasionally been called "variable obscenity" and was favorably cited in *Ginsberg*. 390 U.S. at 635 n.4 (citing William B. Lockhart & Robert C. McClure, *Censorship of Obscenity: The Developing Constitutional Standards*, 45 Minn. L. Rev. 5, 85 (1960)). Variable obscenity is what it sounds like: whether a work has the quality of obscenity "changes with time, place, and circumstance," determined by looking to "the circumstances of its dissemination" and "focusing attention on particular types of audiences." Lockhart & McClure, *supra* at 68, 77. "Variable obscenity . . . furnishes a useful analytical took for dealing with the problem of denying adolescents access to material aimed at a primary audience of sexually mature adults. For variable obscenity focuses attention upon the make-up of primary and peripheral audiences in varying circumstances . . . .'" 390 U.S. at 635 n.4 (quoting Lockhart & McClure, *supra* at 85); *see also Cinecom Theaters Midwest States, Inc. v. City of Fort Wayne*, 473 F.2d 1297, 1302 (7th Cir. 1973) (looking to "limitations inherent in the concept of variable obscenity" as the boundary for regulation as to minors). This Court's decision in *Powell's*, and the decisions in *Ashcroft* and *Virginia Booksellers* track this common-sense idea—some works will have serious value as to some minors, but not others.

* * *

Section 18-1514 incorporates *Miller*'s protection for works of serious value. It applies that protection to all forms of patently offensive material, notwithstanding Northwest's attempt to elevate a scrivener's error over the obvious and express intent of the Legislature to draft a *Miller*-compliant statute in 1976 and in 2024. And the provision takes context into account—including the minor's age—as *Erznoznik* permits. This is more than sufficient to avoid the strong medicine of a facial overbreadth challenge on these points.

## III. The district court correctly found that the remaining preliminary injunction factors do not support an injunction.

The remaining factors support the Attorney General in upholding the district court's denial of the preliminary injunction against H.B. 710. *See, e.g.*, *Carlson*, 968 F.3d at 989 (likelihood of success on the merits is "a threshold inquiry and is the most important factor").

### A. Northwest cannot demonstrate irreparable harm because there is no evidence it will be affected by the statute.

Three and a half months passed between the Governor's signing of H.B. 710 and Northwest's motion for a preliminary injunction, but Northwest could not produce any evidence of concrete harm: no lawsuits, no threatened lawsuits, no damages, no injunctions awarded against it, nothing. Northwest's brief on appeal repeatedly mentions a chilling effect, App. Br. at 1, 3–4, 48, but it cites no record evidence that Northwest itself has actually been chilled—not one class presentation censored, not

one library book removed from the shelves, not one plan developed to change Northwest's operations in any way because of the statute.

Northwest's decision not to be chilled is perfectly justified. To begin with, Idaho's definition of "harmful to minors" has been in effect for nearly fifty years, and throughout that time distributing material harmful to minors has been a misdemeanor. Idaho Code § 18-1515. That misdemeanor did not apply to schools and public libraries, but it did apply to bookstores, private libraries, and anyone else who might give minors harmful material, Idaho Code § 18-1517(d), and yet Northwest cannot cite a single prosecution by any of Idaho's 44 county prosecutors that relied on any of Northwest's theories: the non-exclusive "includes" in § 18-1514(6), the missing "taken as a whole" in § 18-1514(6)(a), and so on—so far as the record shows, no one ever dreamed of any of them until Northwest's lawyers started looking for reasons why the law must be unconstitutional.

Even if the Attorney General or a county prosecutor embraced Northwest's theories and began successfully enforcing them, they could not impose criminal liability or even seek damages. Idaho Code § 18-1517B(5). The most they could do is seek an injunction, and the most the injunction could do is stop Northwest from making the illegal material available to minors. *Id.* Practically speaking, the worst burden the Attorney General could impose on Northwest is the cost and unpleasantness of litigation, which hardly counts as a burden when Northwest voluntarily incurred it by bringing this suit.

The real reason for Northwest's suit is probably the private right of action in § 18-1517B(4), and to the extent the statute actually has a chilling effect (which has not been established), it does not come from the threat that the Attorney General will sue for an injunction but from the threat that parents will sue for actual and statutory damages. *See* App. Br. at 48 ("This chilling effect—and therefore the district court's obligation to adhere to the plain language of the H.B. 710—is exacerbated by the Act's Citizen Enforcement Provision.").

The problem, of course, is that the parents are not parties to this suit, and nothing that happens in this appeal can possibly stop them from suing if they choose.[12] They will not be bound by an injunction against the Attorney General, Fed. R. Civ. P. 65(d)(2); *see also Whole Women's Health v. Jackson*, 595 U.S. 30, 44 (2021), and they will not be bound by issue preclusion, *see e.g., Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 858 n.8 (9th Cir. 2016) (issue preclusion requires same parties or parties in privity with previous proceeding). Their suits will generally involve non-diverse parties and small amounts in controversy, so they will happen in state courts where this Court's precedents are not binding. *See e.g., State v. McNeely*, 398 P.3d 146, 148–49 (Idaho 2017) (district court erred by considering Ninth Circuit binding authority).

Northwest uses this as a reason why relief is all the more crucial: the district court's construction of the statute as constitutional supposedly "exacerbates the harm

---

[12] To the Attorney General's knowledge, no such suits have yet been filed.

to plaintiffs' First Amendment rights" because the "district court's prediction about what [H.B. 710] means has no stare decisis effect on anyone." App. Br. at 3 (quoting *Moshoures v. City of N. Myrtle Beach*, 131 F.4th 158, 162 (4th Cir. 2025)).

But this is Northwest's own fault. If Northwest wanted a binding statement of Idaho law that would protect it from private plaintiffs, Idaho has a court system that could have given it one. Instead, Northwest chose to sue in federal court, where the most it can possibly win is an injunction against public enforcement that leaves private enforcement untouched.

Consequently, even if Northwest suffers a chilling effect from the law—which, again, it has not demonstrated—a preliminary injunction would not have remedied it, and the district court did not err by denying one.

### B. Because Appellee is a government entity, the Balance of Equities and Public Interest merge and both weigh in favor of Appellee.

Where the party opposing injunctive relief is the Government, the balance of equities and the public interest—the third and fourth factors, respectively—merge into one. *Nken v. Holder*, 556 U.S. 418, 435 (2009). While "it is always in the public interest to prevent the violation of a party's constitutional rights," only "serious" constitutional questions "'compel[] a finding that the balance of hardships tip[] sharply'" in favor of plaintiffs. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (quoting *Am. Beverage Ass'n v. City and Cnty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019)). By contrast, a state like Idaho is injured whenever one of its

laws is enjoined. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). And as the district court recognized, Idaho has a strong interest in preventing minors from accessing pornography. ER-39; *accord Ginsberg*, 390 U.S. at 636.

As argued above, Northwest has not demonstrated that it or any other party has suffered a chilling effect or any other harm from Idaho's statute. On the other hand, the injunction Northwest requested below would prevent the Attorney General from enforcing any portion of the statute against anyone, even someone handing out hardcore pornography to preschoolers. ER-115 (requesting injunction against enforcement of "H.B. 710"); SER-120. On these facts, the balance of harms weighs in favor of the Attorney General and the people of Idaho.

If the Court disagrees with the Attorney General's arguments and rules that a preliminary injunction is warranted, it should nonetheless limit the injunction to Northwest and its members as instructed in *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring).

## CONCLUSION

The order denying a preliminary injunction should be affirmed.

Dated: June 23, 2025

Respectfully submitted,

RAÚL R. LABRADOR
ATTORNEY GENERAL

/s/ *Alan M. Hurst*
ALAN M. HURST
SOLICITOR GENERAL

MICHAEL A. ZARIAN
DEPUTY SOLICITOR GENERAL

AARON M. GREEN
DEPUTY ATTORNEY GENERAL

*Counsel for Appellee Raúl Labrador*
*in his official capacity as Attorney General*

### CERTIFICATE OF COMPLIANCE

I certify that this brief contains 13,457 words, excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6). I certify that this brief complies with the word limit of Cir. R. 32-1.

/s/ *Alan M. Hurst*
Alan M. Hurst

## CERTIFICATE OF SERVICE

I certify that on June 23, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

/s/ *Alan M. Hurst*
Alan M. Hurst